## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**JULIAN TEPPER**

      **Plaintiff,**

**v.**                                            **Case No. 16-223**

**GEICO GENERAL INSURANCE COMPANY,**

      **Defendant.**

### NOTICE OF REMOVAL

Defendant GEICO General Insurance Company, by and through its counsel of record, Chapman and Charlebois, P.C., (Donna L. Chapman and Jessica C. Singer), hereby files this Notice of Removal pursuant to 28 U.S.C. §§ 1331, 1441 and 1446, and in support thereof, states as follows:

1.    Plaintiff Julian Tepper ("Plaintiff") filed his Complaint for Damages ("Complaint") in the Second Judicial District, Bernalillo County, State of New Mexico, in Cause No. D-202-CV-2016-00909 (hereinafter "State Court Action") on February 11, 2016. (*See* Plaintiff's Complaint, attached hereto as Exhibit A).

2.    In his Complaint, Plaintiff alleges he was a resident of the State of New Mexico at the time of the collision. (*Id*. at ¶ 1).

3.    Plaintiff named Defendant GEICO, as the only Defendant in Plaintiff's Complaint.

4.    Defendant asserts GEICO is incorporated and its principal place of business is in the state of Maryland.

5.     Diversity of citizenship is present in this matter as set forth in 28 U.S.C. § 1332(a) and 28 U.S.C. § 1441(b)(2).

6.     Defendant accepted service through the Superintendent of Insurance on February 26, 2016.  (*See* Exhibit B).

7.     Less than thirty (30) days have passed since Defendant accepted service of the initial pleadings on this matter.

8.     As Defendant has accepted service and is the only Defendant served in this matter, 28 U.S.C. § 1446(b)(2)(A) is satisfied.  (*See* Register of Actions for the State Court Action, hereto attached as Exhibit C).

9.     Pursuant to Plaintiff's allegations, the amount in controversy exceeds $75,000, as set forth in 28 U.S.C. §§ 1441(b)(2).

10.    Pursuant to the attached documentation from Plaintiff's counsel, dated January 27, 2015, the amount in controversy exceeds the jurisdictional amount of $75,000. *See* also, *Hanna v. Miller*, 163 F.Supp. 2d 1302, 1305-06 (D.N.M. 2001). (*See* Demand letter from Plaintiff counsel dated January 27, 2015, hereto attached as Exhibit D.)

11.    This case may be removed to this Court by Defendant pursuant to the provisions of 28 U.S.C. §§ 1441(b) and 1446.

12.    By and through this Notice of Removal, Defendant removes all claims asserted against it on the basis of diversity jurisdiction, which is conferred upon this Court pursuant to 28 U.S.C. §§ 1332 and 1441.

13.    Pursuant to 28 U.S.C. § 1446(d), written notice of the filing of this Notice of Removal is being concurrently served upon the Plaintiff on this date.

2

14.   Pursuant to 28 U.S.C. § 1446(d), Defendant is concurrently filing a Notice of Filing of Removal in the State Court Action, a copy of which is hereto attached as Exhibit E.

15.   In addition to the Notice of Filing Notice of Removal in the State Court Action, Defendant is concurrently filing an Entry of Appearance in the State Court Action on this date, a copy of which is hereto attached as Exhibit F.

16.   Pursuant to 28 U.S.C. § 1446(a) and D.N.M.LR-Civ. 81.1(a), all process, pleadings, and orders from the State Court Action will be filed with this Court in a separate Transmittal of State Court Record within twenty-eight days (28) of this Notice.

17.   A Civil Cover Sheet for this Court is hereto attached as Exhibit G.

**WHEREFORE**, the removing Defendant gives notice the above-styled action, which was pending in the Second Judicial District, Bernalillo County, State of New Mexico, as Cause No. D-202-CV-2016-00909 is removed to this Court.

Respectfully submitted,

**CHAPMAN AND CHARLEBOIS, P.C.**

*/s/ Jessica C. Singer, Attorney at Law*
Donna L. Chapman
Jessica C. Singer
P.O. Box 92438
Albuquerque, NM 87199
505-242-6000
donna@cclawnm.com
jessica@cclawnm.com
*Attorneys for Defendant GEICO*

I HEREBY CERTIFY that on the 24th day of March, 2016, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Jerry A. Walz, Esq.
Walz and Associates, P.C.
133 Eubank Blvd. NE
Albuquerque, NM 87123
(505) 275-1800
jerryawalz@walzandassociates.com
*Attorney for Plaintiff*

Stephen M. Simone
Simone, Roberts, & Weiss, P.A.
1700 Louisiana Blvd. NE, Ste. 240
Albuquerque, NM 87112
TEL: (505) 298-9400
ssimone@srw-law.com
*Attorneys for GEICO*


**/s/ Jessica C. Singer**
Jessica C. Singer

**FILED IN MY OFFICE**
**DISTRICT COURT CLERK**
**2/11/2016 3:42:21 PM**
**James A. Noel**
**Chris Peck**

**STATE OF NEW MEXICO**
**COUNTY OF BERNALILLO**
**SECOND JUDICIAL DISTRICT COURT**

**JULIAN TEPPER,**

      **Plaintiff,**

**vs.**                             **Case No.:**  D-202-CV-2016-00909

**GEICO GENERAL INSURANCE COMPANY,**

      **Defendant.**

## COMPLAINT FOR UNINSURED MOTORIST DAMAGE INJURIES, BREACH OF CONTRACT, BAD FAITH AND PUNITIVE DAMAGES

COMES NOW Plaintiff Julian Tepper, and by and through his attorneys, Walz and Associates, P.C., Jerry A. Walz, hereby alleges the following:

### FACTS COMMON TO ALL COUNTS

1. Julian Tepper, hereinafter referred to as Mr. Tepper, at all relevant times, was a resident of the State of New Mexico, and lived in Sandoval County at the time of the collision described herein.

2. GEICO General Insurance Company, hereinafter referred to as GEICO, is incorporated and headquartered in the State of Maryland, and is authorized to do business in the State of New Mexico.

3. Mr. Tepper, purchased insurance coverage from Defendant GEICO, and a copy of the declarations page and policy including the uninsured motorist clause are attached respectively hereto as Exhibit A and B.

4. The automobile of a hit-and-run driver (deemed an "uninsured motorist" in the policy) violently struck and collided with Mr. Tepper's vehicle at the point of his driver's side door

1



on February 20, 2013, in Albuquerque, New Mexico, which is located in Bernalillo County, New Mexico.

5. The uninsured motorist drove his vehicle in a negligent and/or reckless fashion.

6. The conduct of the uninsured motorist was the direct and proximate cause of the injuries and damages sustained by Mr. Tepper.

7. The collision was reported by Mr. Tepper, or on his behalf, to the police and to GEICO Insurance in compliance with his insurance coverage.

8. GEICO Insurance, by and through its representatives, accepted Mr. Tepper's claim, and had him fill out medical/informational releases, personal and medical history, and other documents in order to process the uninsured motorist claim.

9. At all times, Mr. Tepper and /or his legal representatives complied with every request made by GEICO.

10. In fact, Defendant GEICO verified policy limits applicable to this particular collision under the uninsured motorist section, and engaged in multiple communications with Mr. Tepper's counsel.

11. GEICO further verified the applicability of the uninsured motorist provisions of Mr. Tepper's policy.

12. At all times, Mr. Tepper was cooperative, submitted all information requested by GEICO, acted in good faith, and complied with the policy.

13. Mr. Tepper, based on his injuries and medical damages, submitted a settlement demand to GEICO upon which GEICO took no action for a significant period of time.

14. Subsequently, Defendant GEICO made a meager counteroffer to Mr. Tepper, as a result of which he, by and through his counsel, requested arbitration with GEICO.

2

15. Pursuant to the applicable uninsured motorist section of his policy, the parties may agree to arbitration and an arbitrator unless arbitrator is mandated by state law. New Mexico does not mandate arbitration of uninsured motorist claims. Therefore, the claimant, in this case Mr. Tepper, can proceed with the direct filing of a lawsuit against GEICO to recover damages.

16. This policy provision and these procedures were discussed with GEICO's claim representative, Rhonda McMorris.

17. Despite Mr. Tepper's submission of an arbitration demand and proposed arbitrators, GEICO has never responded.

18. GEICO's actions and failures to act in addition to breach of contract were and are in bad faith, in violation of the New Mexico Unfair Insurance Practices Act, the New Mexico Unfair Practices Act, and established case authority.

## COUNT I

## DAMAGES FOR PERSONAL INJURIES

19. Mr. Tepper re-alleges all paragraphs previously alleged as if set out fully herein.

20. As a direct and proximate result of the collision caused by the uninsured motorist on February 20, 2013, Mr. Tepper sustained painful and long term personal injuries.

21. Further, as a result of the actions of the uninsured motorist, Mr. Tepper sustained reasonable and necessary medical bills, and will incur reasonable and necessary medical bills in the future.

22. Mr. Tepper is entitled to all damages allowed by law for his personal injuries, including pain and suffering, physical impairments, reasonable and necessary medical bills as well as all damages allowed by law.

3

## COUNT II

### PUNITIVE DAMAGES AGAINST THE UNINSURED MOTORIST

23. Mr. Tepper re-alleges all paragraphs previously alleged as if set out fully herein.

24. Based on the actions of the uninsured motorist who violently T-boned Mr. Tepper's vehicle at the point of his driver's door and then fled the scene, the uninsured motorist in addition to being negligent was also willful and reckless in his conduct for which Mr. Tepper is entitled to an award of exemplary damages.

## COUNT III

### BREACH OF CONTRACT AND PUNITIVE DAMAGES AS TO GEICO

25. Mr. Tepper incorporates all previous allegations as if set forth fully herein.

26. Mr. Tepper, for due and lawful consideration, purchased insurance through GEICO to cover and compensate him for situations such as this.

27. Despite receiving Mr. Tepper's full cooperation at all times and at every turn. GEICO breached its contract with him by making no effort to resolve his claim in good faith.

28. GEICO's delay, stonewalling, and unwillingness even to make a reasonable counteroffer or proceed with arbitration or display the courtesy to respond to Mr. Tepper's arbitration demand, exhibits an ongoing willful breach of its contractual obligations that it owes to Mr. Tepper.

29. GEICO's actions as described above constitute bad faith for which Mr. Tepper is also entitled to punitive damages.

30. Therefore, Mr. Tepper is entitled to contractual damages for breach of contract against GEICO, including punitive damages separate and apart from damages claimed against GEICO for the actions of the uninsured motorist.

## COUNT IV

### BREACH OF THE UNFAIR INSURANCE PRACTICES ACT AND NEW MEXICO UNFAIR PRACTICES ACT

31. Mr. Tepper incorporates all previous allegations as set forth herein.

32. New Mexico has in place the Unfair Insurance Practices Act located at NMSA 1978, §59A-16-1 et seq. and the Unfair Practices Act at NMSA 1978, §58-12-1 et seq.

33. The actions of GEICO violate the Unfair Insurance Practices Act and Unfair Practices Act based on specific allegations set forth above.

34. Mr. Tepper is entitled to damages for the breach by GEICO of New Mexico law, as well as costs and attorney fees as allowed by New Mexico law and case authority.

### PRAYER FOR RELIEF

WHEREFORE, Mr. Tepper respectfully requests compensatory damages, punitive damages, and all other damages for which he is entitled pursuant to New Mexico law, and allowed against the uninsured motorist as covered by the GEICO policy. Further, Mr. Tepper respectfully requests additional and separate damages against GEICO, for reasons set forth above, including but not limited to compensatory damages, punitive damages, attorney fees and costs and all damages provided by law.

Respectfully submitted,

WALZ AND ASSOCIATES, P.C.

/s/ Jerry A. Walz
Jerry A. Walz, Esq.
*Attorney for Plaintiff*
133 Eubank Blvd NE
Albuquerque, NM 87123
(505) 275-1800
jerryawalz@walzandassociates.com

5



**GEICO.®**
**geico.com**

Tel: 1-800-841-3000

**Declarations Page**
This is a description of your coverage.
Please retain for your records.

**GEICO GENERAL INSURANCE COMPANY**
P.O. Box 509090
San Diego, CA 92150-9090

Date Issued: December 12, 2012

**Policy Number: 0788-09-29-06**
**Coverage Period:**
01-15-13 through 07-15-13
12:01 a.m. local time at the address of the named insured.

JULIAN TEPPER AND DEBORAH H
TEPPER
14 CALLE LAGARTIJAS
PLACITAS NM  87043-9504

Email Address: juliantepper1@gmail.com

| **Named Insured** | **Additional Driver** |
|---|---|
| Julian Tepper | Callie J Tepper |
| Deborah H Tepper | |

| **Vehicles** | | | **VIN** | **Vehicle Location** | **Finance Company/ Lienholder** |
|---|---|---|---|---|---|
| 1 2006 | Mazda | Mazda6 | 1YVHP80C365M61383 | Placitas NM 87043 | |
| 2 2002 | Nissan | SntrXE/GXE | 3N1CB51D62L686351 | Placitas NM 87043 | |

| **Coverages*** | **Limits and/or Deductibles** | **Vehicle 1** | **Vehicle 2** |
|---|---|---|---|
| Bodily Injury Liability | | | |
| Each Person/Each Occurrence | $300,000/$300,000 | $82.50 | $192.30 |
| Property Damage Liability | $50,000 | $45.30 | $111.40 |
| Medical Payments | $3,000 | $10.20 | $19.30 |
| Uninsured Motorists Bodily Injury | | | |
| Each Person/Each Occurrence | $300,000/$300,000 | $114.40 | $114.40 |
| Uninsured Motorist Property Damage | $50,000 | $0.00 | $0.00 |
| Comprehensive | $250 Ded | $73.30 | $89.40 |
| Collision | $250 Ded | $116.30 | $146.70 |
| Emergency Road Service | Full | $7.20 | $8.10 |
| Rental Reimbursement | $30 Per Day | $10.00 | $10.00 |
| | $900 Max | - | - |

| **Six Month Premium Per Vehicle** | | **$459.20** | **$691.60** |
|---|---|---|---|
| **Total Six Month Premium** | | | **$1,150.80** |

*Coverage applies where a premium or $0.00 is shown for a vehicle.

If you elect to pay your premium in installments, you may be subject to an additional fee for each installment. The fee amount will be shown on your billing statements and is subject to change.

T-M
DEC_PAGE (11-11) (Page 1 of 2)

**EXHIBIT A**

**<u>Discounts</u>**

| | |
|---|---|
| **The total value of your discounts is** | **$491.00** |
| Seatbelt (All Vehicles) .................................................................................................. | $5.20 |
| Multi-Car (All Vehicles) ................................................................................................. | $269.00 |
| Sponsored Group (All Vehicles) .................................................................................... | $99.40 |
| Anti-Lock Brakes (All Vehicles) ..................................................................................... | $13.80 |
| Anti-Theft Device (Veh 1) .............................................................................................. | $8.10 |
| 5 Year Good Driving (Veh 1)........................................................................................... | $76.00 |
| Passive Restraint/Air Bag (All Vehicles)........................................................................ | $19.50 |

**Contract Type:** A30NM
**Contract Amendments:**  ALL VEHICLES - A30NM A54NM

**Unit Endorsements:**     A115 (VEH 1,2); A431 (VEH 1,2)

---

## Important Policy Information

-Please review the front and/or back of this page for your coverage and discount information.

-Active Duty, Guard, Reserve or Retired Military: Call 1-800-MILITARY to see if you qualify for the Military Discount.

-You are receiving a $99.40 discount based on your membership in DC BAR .

-No coverage is provided in Mexico.

-Reminder - Physical damage coverage will not cover loss for custom options on an owned automobile, including equipment, furnishings or finishings including paint, if the existence of those options has not been previously reported to us. This reminder does NOT apply in VIRGINIA and NORTH CAROLINA. Please call us at 1-800-841-3000 or visit us at geico.com if you have any questions.

-You have the right to receive a detailed written explanation of the reasons for any change to your renewal policy premium.

---

**GEICO**

ONE GEICO PLAZA
Washington, D. C.  20076-0001
Telephone: 1-800-841-3000

# New Mexico Family Automobile Insurance Policy

A30NM (02-13)

**EXHIBIT B**

POLICY INDEX

Page

**SECTION I - LIABILITY COVERAGES**

**Your Protection Against Claims From Others**
Definitions                                                    3
Losses We Will Pay For You                                    3
Additional Payments We Will Make Under  The
   Liability Coverages                                        3
     Legal Expenses and Court Costs
     Bail and Appeal Bonds
     First Aid Expenses
Exclusions: When Section I Does Not Apply                     4
Persons Insured: Who is Covered                               5
Financial Responsibility Laws                                 5
Out-of-State Insurance                                        5
Limits of Liability                                           5
Other Insurance                                               5
Conditions                                                    5
   Notice: Reporting Your Loss
     If Suit is Brought Against You
   Two or More Autos
   Assistance and Cooperation of the Insured
   Action Against Us
   Subrogation

**SECTION II - AUTOMOBILE MEDICAL PAYMENTS COVERAGE**

**Protection For You and Your Passengers For Medical Expenses**
Definitions                                                    6
Payments We Will Make                                         6
Exclusions: When This Coverage Does Not Apply                7
Limit of Liability                                            7
Other Insurance                                               7
Conditions                                                    7
   Notice
   Two Or More Autos
   Action Against Us
   Medical Reports - Proof And Payment of Claims
   Subrogation

**SECTION III - PHYSICAL DAMAGE COVERAGES**

**Your Protection for Loss of or Damage to Your Car**
Definitions                                                    8
Losses We Will Pay For You                                    8
   Comprehensive (Excluding Collision) Coverage         8
   Collision Coverage                                    9
Additional Payments We Will Make Under The
   Physical Damage Coverages                             9
Exclusions: When The Physical Damage
   Coverages Do Not Apply                                9
Limits of Liability                                          10
Other Insurance                                             10
Conditions                                                 10

Page

   Notice
   Two or More Autos
   Assistance and Cooperation of the Insured
   Action Against Us
   Insured's Duties in Event of Loss
   Appraisal
   Payment of Loss
   No Benefit To Bailee
   Subrogation

**SECTION IV - UNINSURED MOTORISTS AND UNDERINSURED MOTORIST COVERAGE**

**Your Protection For Injuries Caused By Uninsured/Underinsured And Hit And Run Motorists**
Definitions                                                   11
Losses We Pay                                                12
Exclusions: When This Coverage Does Not Apply               12
Limits of Liability                                          13
Other Insurance                                             13
Arbitration                                                 13
Trust Agreement                                             14
Conditions                                                 14
   Notice: Reporting Your Loss
   Assistance and Cooperation of the Insured
   Action Against Us
   Proof of Claim and Medical Reports
   Payment of Loss

**SECTION V - GENERAL CONDITIONS**

**The Following Apply to All coverage In This Policy**
Territory                                                    15
Premium                                                     15
Changes                                                     15
Assignment                                                  15
Cancellation By The Insured                                 15
Cancellation By Us                                          15
Cancellation By Us Is Limited                               16
Renewal                                                     16
Other Insurance                                             16
Dividend Provision                                          16
Declarations                                                16
Fraud and Misrepresentation                                 16
Examination Under Oath                                      16
Policy Period                                               17
Terms of Policy Conformed to Statues                        17
Disposal of Vehicle                                         17
Choice of Law                                               17

**SECTION VI - AMENDMENTS AND ENDORSEMENTS**

**Special Endorsement - United States -  Government**
   Employees                                             17

Whenever "he," "his," him," or "himself" appears in this policy, *you* may read "she," "her," "hers," or "herself."

## AGREEMENT

We, the Company named in the declarations attached to this policy, make this agreement with *you*, the policyholder. Relying on the information *you* have furnished and the declarations attached to this policy and if *you* pay *your* premium when due, we will do the following:

## SECTION I - LIABILITY COVERAGES - BODILY INJURY LIABILITY AND PROPERTY DAMAGE LIABILITY
### YOUR PROTECTION AGAINST CLAIMS FROM OTHERS

### DEFINITIONS

The words italicized in **Section I** of this policy are defined below.

1. *Auto business* means the business of selling, repairing, servicing, storing, transporting or parking of autos.

2. *Bodily injury* means bodily injury to a person, including resulting sickness, disease or death.

3. *Farm auto* means a truck type vehicle with a load capacity of 2,000 pounds or less, not *used* for commercial purposes other than farming.

4. *Insured* means a person or organization described under "persons insured."

5. *Non-owned auto* means an automobile or *trailer* not owned by or furnished for the regular *use* of either *you* or a *relative*, other than a *temporary substitute auto*. An auto rented or leased for more than 30 days will be considered as furnished for regular *use*.

6. *Owned auto* means:
   (a) A vehicle described in this policy for which a premium charge is shown for these coverages;
   (b) A *trailer* owned by *you;*
   (c) A *private passenger, farm* or *utility auto*, ownership of which *you* acquire during the policy period or for which *you* enter into a lease during the policy period for a term of six months or more, if
       (i) It replaces an *owned auto* as defined in (a) above; or
       (ii) We insure all *private passenger, farm* and *utility autos* owned by *you* on the date of the acquisition, and *you* ask us to add it to the policy no more than 30 days later;
   (d) A *temporary substitute auto*.

7. *Private passenger auto* means a four-wheel private passenger, station wagon or jeep-type auto.

8. *Relative* means a person related to *you* who resides in *your* household.

9. *Temporary substitute auto* means an automobile or *trailer*, not owned by *you*, temporarily *used* with the express or implied permission of the owner. This vehicle must be used as a substitute for the *owned auto* or *trailer* when withdrawn from normal *use* because of its breakdown, repair, servicing, loss or destruction.

10. *Trailer* means a *trailer* designed to be towed by a *private passenger auto*, if not being *used* for business or commercial purposes with a vehicle other than a *private passenger, farm* or *utility auto*.

11. *Use* of an auto includes the loading and unloading of the auto.

12. *Utility auto* means a vehicle, other than a *farm auto*, with a load capacity of 2,000 pounds or less of the pick-up body, van or panel truck type not *used* for commercial purposes.

13. *War* means armed conflict between nations, whether or not declared, civil war, insurrection, rebellion or revolution.

14. *You* and *your* means the policyholder named in the declarations or his or her spouse if a resident of the same household.

### LOSSES WE WILL PAY FOR YOU

Under **Section I**, we will pay damages which an *insured* becomes legally obligated to pay because of:

1. *Bodily injury*, sustained by a person, and

2. Damage to or destruction of property,

arising out of the ownership, maintenance or *use* of the *owned auto* or a *non-owned auto*. We will defend any suit for damage payable under the terms of this policy. We may investigate and settle any claim or suit.

### ADDITIONAL PAYMENTS WE WILL MAKE UNDER THE LIABILITY COVERAGES

1. All investigative and legal costs incurred by us.

2. All court costs charged to an *insured* in a covered law suit.

3. All interest accruing on that amount of a judgment which represents our limit of liability, until we have paid, offered, or deposited in court that part of a judgment not exceeding the limit of our liability.

4. Premiums for appeal bonds in a suit we appeal, or premiums for bonds to release attachments; but the face amount of these bonds may not exceed the applicable limit of liability.

5. Premiums for bail bonds paid by an *insured* due to traffic law violations arising out of the *use* of an insured auto, not to exceed $250 per bail bond.

We will upon request by an *insured*, provide reimbursement for the following items:

   a. Costs incurred by any *insured* for first aid to others at the time of an accident involving an *owned auto* or *non-owned auto.*

   b. Loss of earnings up to $50 a day, but not other income, if we request an *insured* to attend hearings and trials.

   c. All reasonable costs incurred by an *insured* at our request.

## EXCLUSIONS

### When Section I Does Not Apply

1. **Section I** does not apply to any vehicle *used* to carry passengers or goods for hire. However, a vehicle *used* in an ordinary car pool on a ride sharing or cost sharing basis is covered.

2. *Bodily injury* or property damage caused intentionally by or at the direction of an *insured* is not covered.

3. We do not cover *bodily injury* or property damage that is insured under a nuclear liability policy.

4. *Bodily injury* or property damage arising from the operation of farm machinery is not covered.

5. *Bodily injury* to an employee of an *insured* arising out of and in the course of employment by an *insured* is not covered.

However, *bodily injury* of a domestic employee of the *insured* is covered unless benefits are payable or are required to be provided under a workers' or workmen's compensation law.

6. We do not cover *bodily injury* to a fellow employee of an *insured* (other than *you*) if the fellow employee's *bodily injury* arises from the *use* of an auto while in the course of employment and if workers' compensation or other similar coverage is available. We will defend *you* if suit is brought by a fellow employee against *you* alleging injury arising out of the *use*, ownership or maintenance of an auto by *you*.

7. A *non-owned auto*, maintained or *used* by any person, is not covered while such person is employed or otherwise engaged in (1) any *auto business* if the accident arises out of that business; (2) any other business or occupation of any *insured* if the accident arises out of that business or occupation, except a *private passenger auto used* by *you* or *your* chauffeur or domestic servant while engaged in such other business.

However, coverage does apply to a *non-owned private passenger auto used* by *you*, *your* chauffeur or a domestic servant, while engaged in the business of an *insured*.

8. We do not cover:

   (a) The United States of America or any of its agencies;

   (b) Any person, including *you,* if protection is afforded under the provisions of the Federal Tort Claims Act.

9. We do not cover an auto acquired by *you* during the policy term, if *you* have purchased other liability insurance for it.

10. We do not cover damage to:

   (a) Property, including motor vehicles of any type, owned or transported by an *insured*; or

   (b) Property rented to or in the charge of an *insured* other than a residence or private garage.

11. *Bodily injury* or property damage that results from nuclear exposure or explosion including resulting fire, radiation or contamination is not covered.

12. *Bodily injury* or property damage that results from bio-chemical attack or exposure to bio-chemical agents is not covered

13. We do not cover any liability assumed under any contract or agreement.

14. We do not cover *bodily injury* or property damage caused by an auto driven in or preparing for, whether or not prearranged or organized, any racing, speed, or demolition contest or stunting activity of any nature.

15. Regardless of any other provision of this policy, there is no coverage for punitive or exemplary damages.

## PERSONS INSURED

### Who Is Covered

**Section I** applies to the following as *insureds* with regard to an *owned auto*:

1. *You* and *your relatives*;
2. Any other person using the auto with *your* express or implied permission. The actual *use* must be within the scope of that permission.
3. Any other person or organization for his or its liability because of acts or omissions of an *insured* under **1.** or **2.** above.

**Section I** applies to the following with regard to a *non-owned auto*:

1. (a) *You*;
   (b) *Your relatives* when using a *private passenger auto*, *utility auto*, *farm auto*, or *trailer*.

   Such *use* by *you* or *your relatives* must be with the express or implied permission, or reasonably believed to be with the express or implied permission, of the owner and within the scope of that permission.
2. A person or organization, not owning or hiring the auto, regarding its liability because of acts or omissions of an *insured* under **1.** above.

The limits of liability stated in the declarations are our maximum obligations regardless of the number of *insureds* involved in the occurrence.

## FINANCIAL RESPONSIBILITY LAWS

When this policy is certified as proof of financial responsibility for the future under the provisions of a motor vehicle financial responsibility law, this liability insurance will comply with the provisions of that law. The *insured* agrees to reimburse us for payments made by us which we would not have had to make except for this agreement.

## OUT-OF-STATE INSURANCE

When the policy applies to the operation of a motor vehicle outside of *your* state, we agree to increase *your* coverages to the extent required of out-of-state motorists by local law. This additional coverage will be reduced by the extent that *you* are protected by another insurance policy. No person can be paid more than once for any item of loss.

## LIMITS OF LIABILITY

Regardless of the number of autos or *trailers* to which this policy applies:

1. The limit of bodily injury liability stated in the declarations as applicable to "each person" is the limit of our liability   for all damages, including damages for care and loss of services, because of *bodily injury* sustained by one person as the result of one occurrence.
2. The limit of such liability stated in the declarations as applicable to "each occurrence" is, subject to the above provision respecting each person, the total limit of our liability for all such damages, including damages for care and loss of services, because of *bodily injury* sustained by two or more persons as the result of any one occurrence.
3. The limit of property damage liability stated in the declarations as applicable to "each occurrence" is the total limit of our liability for all damages because of injury to or destruction of the property of one or more persons or organizations, including the loss of use of the property as the result of any one occurrence.

## OTHER INSURANCE

If the *insured* has other insurance against a loss covered by **Section I** of this policy, we will not owe more than our pro-rata share of the total coverage available.

Any insurance we provide for losses arising out of the ownership, maintenance or *use* of a vehicle *you* do not own shall be excess over any other valid and collectible insurance.

## CONDITIONS

The following conditions apply to **Section I**:

1. NOTICE

   As soon as possible after an occurrence, written notice must be given by or on behalf of the *insured* to us or our authorized agent stating:
   (a) The identity of the *insured;*
   (b) The time, place and details of the occurrence;
   (c) The name and addresses of the injured, and of any witnesses; and
   (d) The names of the owners and the description and location of any damaged property.

If a claim or suit is brought against an *insured*, he must promptly send us each demand, notice, summons or other process received.

2. TWO OR MORE AUTOS

If this policy covers two or more autos, the limit of coverage applies separately to each. An auto and an attached *trailer* are considered to be one auto.

3. ASSISTANCE AND COOPERATION OF THE *INSURED*

The *insured* will cooperate and assist us if requested:
(a) In the investigation of the occurrence;
(b) In making settlements;
(c) In the conduct of suits;
(d) In enforcing any right of contribution or indemnity against any legally responsible person or organization because of *bodily injury* or property damage;
(e) At trials and hearings;
(f) In securing and giving evidence; and
(g) By obtaining the attendance of witnesses.

Only at his own cost will the *insured* make a payment, assume any obligation or incur any cost other than for first aid to others.

4. ACTION AGAINST US

No suit will lie against us:
(a) Unless the *insured* has fully complied with all the policy's terms and conditions; and
(b) Until the amount of the *insured's* obligation to pay has been finally determined either:
    (i) By a final judgment against the *insured* after actual trial; or
    (ii) By written agreement of the *insured*, the claimant and us.

A person or organization or the legal representative of either, who secures a judgment or written agreement, may then sue to recover up to the policy limits.

No person or organization, including the *insured*, has a right under this policy to make us a defendant in an action to determine the *insured's* liability.

Bankruptcy or insolvency of the *insured* or of his estate will not relieve us of our obligations.

5. SUBROGATION

When payment is made under this policy, we will be subrogated to all the *insured's* rights of recovery against others. The *insured* will help us to enforce these rights. The *insured* will do nothing after loss to prejudice these rights.

This means we will have the right to sue for or otherwise recover the loss from anyone else who may be held responsible.

---

## SECTION II - AUTO MEDICAL PAYMENTS
## PROTECTION FOR *YOU* AND *YOUR* PASSENGERS FOR MEDICAL EXPENSES

**DEFINITIONS**

The definitions of terms shown under **Section I** apply to this coverage. In addition, under this coverage, *occupying* means in or upon or entering into or alighting from.

**PAYMENTS WE WILL MAKE**

Under this coverage we will pay all reasonable expenses actually incurred by an *insured* within one year from the date of accident for necessary medical, surgical, x-ray, dental services, prosthetic devices, ambulance, hospital, professional nursing and funeral services. The one year limit does not apply to funeral services.

This coverage applies to:

1. *You* and each *relative* who sustains *bodily injury* caused by accident:
   (a) While *occupying* the *owned auto*; or
   (b) While *occupying* a *non-owned auto* if *you* or *your relative* reasonably believe *you* have the owner's permission to *use* the auto and the *use* is within the scope of that permission; or
   (c) When struck as a pedestrian by an auto or *trailer*.

2. Any other person who sustains *bodily injury* caused by accident while *occupying* the *owned auto* while being *used* by *you*, a resident of *your* household, or other persons with *your* permission.

## EXCLUSIONS

### When This Coverage Does Not Apply

1. There is no coverage for **bodily injury** sustained by any occupant of an **owned auto used** to carry passengers or goods for hire. However, a vehicle **used** in an ordinary car pool on a ride sharing or cost sharing basis is covered.

2. There is no coverage for an **insured** while **occupying** a vehicle located for use as a residence or premises.

3. **You** and **your relatives** are not covered for **bodily injury** sustained while **occupying** or when struck by:

    (a) A farm-type tractor or other equipment designed for **use** principally off public roads, while not upon public roads; or
    (b) A vehicle operated on rails or crawler treads.

4. There is no coverage for persons employed in the **auto business**, if the accident arises out of that business and if benefits are required to be provided under a worker's compensation law.

5. There is no coverage for **bodily injury** sustained due to **war**.

6. There is no coverage for **bodily injury** that results from nuclear exposure or explosion including resulting fire, radiation or contamination.

7. There is no coverage for **bodily injury** that results from bio-chemical attack or exposure to bio-chemical agents.

8. We do not cover **bodily injury** caused by an auto driven in or preparing for, whether or not prearranged or organized, any racing, speed, or demolition contest or stunting activity of any nature.

### LIMIT OF LIABILITY

The limit of liability for medical payments stated in the declarations as applying to "each person" is the limit we will pay for all costs incurred by or on behalf of each person who sustains **bodily injury** in one accident. This applies regardless of the number of persons insured or the number of autos or **trailers** to which this policy applies.

### OTHER INSURANCE

If the **insured** has other medical payments insurance against a loss covered by Section II of this policy, we will not owe more than our pro-rata share of the total coverage available.

Any insurance we provide to a person who sustains **bodily injury** while **occupying** a vehicle **you** do not own shall be excess over any other valid and collectible insurance.

### CONDITIONS

The following conditions apply to this coverage:

1. NOTICE

    As soon as possible after an accident, written notice must be given by or on behalf of the **insured** to us or our authorized agent stating:

    (a) The identity of the **insured**;
    (b) The time, place and details of the accident; and
    (c) The names and addresses of the injured, and of any witnesses.

2. TWO OR MORE AUTOS

    If this policy covers two or more autos, the limit of coverage applies separately to each. An auto and an attached **trailer** are considered to be one auto.

3. ACTION AGAINST US

    Suit will not lie against us unless the **insured** has fully complied with all the policy terms.

4. MEDICAL REPORTS - PROOF AND PAYMENT OF CLAIMS

    As soon as possible, the injured person or his representative will furnish us with written proof of claim, under oath if required. After each request from us, he will give us written authority to obtain medical reports and copies of records.

    The injured person will submit to an examination by doctors chosen by us and at our expense as we may reasonably require.

    We may pay either the injured person, the doctor or other persons or organizations rendering medical services. These payments are made without regard to fault or legal liability of the **insured**.

5. SUBROGATION

    When we make a payment under this coverage, we will be subrogated (to the extent of our payment) to the rights of recovery the injured person or anyone receiving such payments may have against any person or organization. Such person shall do whatever is necessary to secure our rights and shall do nothing to prejudice them.

## SECTION III - PHYSICAL DAMAGE COVERAGES
### *YOUR* PROTECTION FOR LOSS OR DAMAGE TO *YOUR* CAR

**DEFINITIONS**

The definitions of the terms *auto business, farm auto, private passenger auto, relative, temporary substitute auto, utility auto, you, use* and *war* under **Section I** apply to **Section III** also.  Under this Section, the following special definitions apply.

1.  *Actual cash value* is the replacement cost of the auto or property less *depreciation* or *betterment.*

2.  *Betterment* is improvement of the auto or property to a value greater than its pre-loss condition.

3.  *Collision* means *loss* caused by upset of the covered auto or its collision with another object, including an attached vehicle.

    *Losses* caused by the following are comprehensive losses:

    (a) missiles; (b) falling objects; (c) fire; (d) lightning; (e) theft; (f) larceny; (g) explosion; (h) earthquake;(i) colliding with a bird or animal; (j) windstorm; (k) hail; (l) water; (m) flood; (n) malicious mischief; (o) vandalism; (p) riot; or (q) civil commotion.

4.  *Custom parts* or *equipment* means paint, equipment, devices, accessories, enhancements, and changes, other than those which are original manufacturer installed, which:

    (a) Are permanently installed or attached; or
    (b) Alter the appearance or performance of a vehicle;

    This includes any electronic equipment, antennas, and other devices used exclusively to send or receive audio, visual, or data signals, or to play back recorded media, other than those which are original manufacturer installed, that are permanently installed in the *owned auto* or a newly acquired vehicle using bolts or brackets, including slide-out brackets.

5.  *Depreciation* means a decrease or loss in value to the auto or property because of use, disuse, physical wear and tear, age, outdatedness, or other causes.

6.  *Insured* means:

    (a) Regarding the *owned auto*:
        (i)  *You* and *your relatives*;
        (ii) A person or a organization maintaining, *using* or having custody of the auto with *your* permission, if his use is within the scope of that permission.
    (b) Regarding a *non-owned auto; you* and *your relatives, using* the auto, if the actual operation or *use* is with the permission or reasonably believed to be with the permission of the owner and within the scope of that permission.

7.  *Loss* means direct and accidental loss of or damage to:

    (a) The auto, including its equipment; or
    (b) Other insured property.

8.  *Non-owned auto* means a *private passenger auto, utility auto, farm auto,* or *trailer* not owned by or furnished for the regular *use* of either *you* or *your relatives,* except a *temporary substitute auto. You* or *your relative* must be *using* the auto or *trailer* within the scope of permission given by its owner. An auto rented or leased for more than 30 days will be considered as furnished for regular use.

9.  *Owned auto* means:

    (a) Any vehicle described in this policy for which a specific premium charge indicates there is coverage;
    (b) A *private passenger, farm auto* or *utility auto* or a *trailer,* ownership of which is acquired by *you* during the policy period or for which *you* enter into a lease for six months or more during the policy period; if
        (i)  It replaces an *owned auto* as described in (a) above, or
        (ii) We insure all *private passenger, farm, utility autos* and *trailers* owned by *you* on the date of such acquisition and *you* request us to add it to the policy within 30 days afterward;
    (c) A *temporary substitute auto.*

10. *Trailer* means a trailer designed for use with a *private passenger auto* and not used as a home, office, store, display or passenger trailer.

**LOSSES WE WILL PAY FOR** *YOU*
**COMPREHENSIVE (EXCLUDING** *COLLISION***)**
1.  We will pay for each *loss,* less the applicable deductible, caused other than by *collision,* to the *owned* or *non-owned auto.* This includes glass breakage.

No deductible will apply to *loss* caused by fire, lightning, smoke, smudge, or damage sustained while the vehicle is being transported on any conveyance.

At the option of the *insured*, breakage of glass caused by *collision* may be paid under the Collision coverage, if included in the policy.

2.  We will pay, up to $200 per occurrence, less any deductible shown in the declarations, for *loss* to personal effects due to:
    (a) fire; (b) lightning; (c) flood; (d) theft of the entire automobile; (e) falling objects; (f) earthquake; or (g) explosion.
    The property must be owned by *you* or a *relative,* and must be in or upon an *owned auto*.

    No deductible will apply due to *loss* by fire or lightning.

3.  Losses arising out of a single occurrence shall be subject to no more than one deductible.

## COLLISION

1.  We will pay for *collision loss* to the *owned* or *non-owned auto* for the amount of each *loss* less the applicable deductible.
2.  We will pay up to $200 per occurrence, less the applicable deductible, for *loss* to personal effects due to a *collision*. The property must be owned by *you* or a *relative*, and must be in or upon an *owned auto*.
3.  *Losses* arising out of a single occurrence shall be subject to no more than one deductible.

## ADDITIONAL PAYMENTS WE WILL MAKE UNDER THE PHYSICAL DAMAGES COVERAGES

1.  We will reimburse the *insured* for transportation expenses incurred during the period beginning 48 hours after a theft of the entire auto covered by comprehensive coverage under this policy has been reported to us and the police. Reimbursement ends when the auto is returned to use or we pay for the *loss*.
    Reimbursement will not exceed $25 per day, nor $750 per *loss*.
2.  We will pay general average and salvage charges for which the *insured* becomes legally liable when the auto is being transported.

## EXCLUSIONS

### When The Physical Damage Coverages Do Not Apply

1.  An auto *used* to carry passengers or goods for hire is not covered. However, a vehicle *used* in an ordinary car pool on a ride sharing or cost sharing basis is covered.
2.  *Loss* due to *war* is not covered.
3.  We do not cover *loss* to a *non-owned auto* when *used* by the *insured* in the *auto business*.
4.  There is no coverage for damage caused by and limited to wear and tear, freezing, mechanical or electrical breakdown or failure, unless that damage results from a covered theft.
5.  Tires, when they alone are damaged by *collision*, are not covered.
6.  *Loss* due to radioactivity is not covered.
7.  *Loss* to any tape, wire, record disc or other medium for use with a device designed for the recording and/or reproduction of sound is not covered.
8.  We do not cover *loss* to any radar detector or laser detector.
9.  We do not cover *trailers* when used for business or commercial purposes with vehicles other than *private passenger*, *farm* or *utility autos*.
10. There is no coverage for *loss* that results from nuclear exposure or explosion including resulting fire, radiation or contamination.
11. There is no coverage for *loss* that results from bio-chemical attack or exposure to bio-chemical agents.
12. We do not cover *loss* for *custom parts or equipment* unless the existence of those *custom parts or equipment* has been previously reported to us and an endorsement to the policy has been added
13. There is no coverage for any liability assumed under any contract or agreement.
14. There is no coverage for any *loss* resulting from:
    (a) The acquisition of a stolen vehicle;
    (b) Any governmental, legal or other action to return a vehicle to its legal, equitable, or beneficial owner, or anyone claiming an ownership interest in the vehicle;
    (c) Any confiscation, seizure or impoundment of a vehicle by governmental authorities; or
    (d) The sale of an *owned auto*.

15. There is no coverage for the destruction, impoundment, confiscation or seizure of a vehicle by governmental or civil authorities due to its use by *you*, a *relative* or a permissive user of the vehicle in illegal activity.

16. There is no coverage for any *loss* caused by participation in or preparing for, whether or not prearranged or organized, any racing or demolition contest or stunting activity of any nature.

**LIMIT OF LIABILITY**

The limit of our liability for *loss*:

1. Is the *actual cash value* of the property at the time of *loss*;

2. Will not exceed the cost to repair or replace the property, or any of its parts, with other of like kind and quality and will not include compensation for any diminution of the property's value that is claimed to result from the *loss*;

3. To personal effects arising out of one occurrence is $200;

4. To a *trailer* not owned by *you* is $500;

5. For *custom parts or equipment* is limited to the *actual cash value* of the *custom parts or equipment*, not to exceed the *actual cash value* of the vehicle.

6. For glass repair or replacement, is not to exceed the prevailing competitive price. Although *you* have the right to choose any glass repair facility or location, the limit of liability for *loss* to window glass is the cost to repair or replace such glass but will not exceed the prevailing competitive price. This is the price we can secure from a competent and conveniently located glass repair facility. At *your* request, we will identify a glass repair facility that will perform the repairs at the prevailing competitive price.

*Actual cash value* of property will be determined at the time of the *loss* and will include an adjustment for *depreciation/betterment* and for the physical condition of the property.

**OTHER INSURANCE**

If the *insured* has other insurance against a *loss* covered by **Section III**, we will not owe more than our pro rata share of the total coverage available.

Any insurance we provide for a vehicle *you* do not own shall be excess over any other valid and collectible insurance.

**CONDITIONS**

The following conditions apply only to the Physical Damage coverages:

1. NOTICE

   As soon as possible after a *loss*, written notice must be given by or on behalf of the *insured* to us or our authorized agent stating:
   (a) The identity of the *insured*;
   (b) A description of the auto or *trailer*;
   (c) The time, place and details of the *loss*; and
   (d) The names and addresses of any witnesses.

   In case of theft, the *insured* must promptly notify the police.

2. TWO OR MORE AUTOS

   If this policy covers two or more autos or *trailers*, the limit of coverage and any deductibles apply separately to each.

3. ASSISTANCE AND COOPERATION OF THE *INSURED*

   The *insured* will cooperate and assist us, if requested:
   (a) In the investigation of the *loss*;
   (b) In making settlements;
   (c) In the conduct of suits;
   (d) In enforcing any right of subrogation against any legally responsible person or organization;
   (e) At trials and hearings;
   (f) In securing and giving evidence; and
   (g) By obtaining the attendance of witnesses.

4. ACTION AGAINST US

   Suit will not lie against us unless the policy terms have been complied with and until 30 days after proof of loss is filed and the amount of *loss* is determined.

   If we retain salvage, we have no duty to preserve or otherwise retain the salvage for any purpose, including as evidence for any civil or criminal proceeding. If *you* ask us immediately after a *loss* to preserve the salvage for inspection, we will do so for a period not to exceed 30 days. *You* may purchase the salvage from us if *you* wish.

5.  *INSURED'S* DUTIES IN EVENT OF *LOSS*

In the event of *loss* the *insured* will:

(a) Protect the auto, whether or not the *loss* is covered by this policy. Further *loss* due to the *insured's* failure to protect the auto will not be covered. Reasonable expenses incurred for this protection will be paid by us.
(b) File with us, within 91 days after *loss*, his sworn proof of loss including all information we may reasonably require.
(c) At our request, the *insured* will exhibit the damaged property.

6.  APPRAISAL

If we and the *insured* do not agree on the amount of *loss,* either may, within 60 days after proof of loss is filed, demand an appraisal of the *loss*. In that event, we and the *insured* will each select a competent appraiser. The appraisers will select a competent and disinterested umpire. The appraisers will state separately the *actual cash value* and the amount of the *loss*. If they fail to agree, they will submit the dispute to the umpire. An award in writing of any two will determine the amount of the *loss*. We and the *insured* will each pay his chosen appraiser and will bear equally the other expenses of the appraisal and umpire.

We will not waive our rights by any of our acts relating to appraisal.

7.  PAYMENT OF *LOSS*

We may at our option:

(a) Pay for the *loss*; or
(b) Repair or replace the damaged or stolen property.

At any time before the *loss* is paid or the property replaced, we may return any stolen property to *you* or to the address shown in the declarations at our expense with payment for covered damage. We may take all or part of the property at the agreed or appraised value, but there will be no abandonment to us. We may settle claims for *loss* either with the *insured* or the owner of the property.

8.  NO BENEFIT TO BAILEE

This insurance does not apply directly or indirectly to the benefit of a carrier or other bailee for hire liable for the *loss* of the auto.

9.  SUBROGATION

When payment is made under this policy, we will be subrogated to all the *insured's* rights of recovery against others. The *insured* will help us to enforce these rights. The *insured* will do nothing after *loss* to prejudice these rights.

This means we will have the right to sue for or otherwise recover the *loss* from anyone else who may be held responsible.

---

**SECTION IV - UNINSURED MOTORISTS AND UNDERINSURED MOTORISTS COVERAGES**
**PROTECTION FOR *YOU, YOUR RELATIVES* AND *YOUR* PASSENGERS FOR INJURIES AND PROPERTY**
**DAMAGE CAUSED BY UNINSURED/UNDERINSURED AND HIT-AND-RUN MOTORISTS**

---

**DEFINITIONS**

The definitions of terms for **Section I** apply to **Section IV**, except for the following special definitions:

1.  **Hit-and-run motor vehicle** is a motor vehicle causing *bodily injury* to an *insured* or *property damage* through physical contact with him or with a motor vehicle he is *occupying* at the time of the accident and whose operator or owner cannot be identified, provided the *insured* or someone on his behalf:

(a) Reports the accident within 24 hours to a police, peace or judicial officer or to the Commissioner of Motor Vehicles;
(b) Files with us within 30 days a statement setting forth the facts of the accident and claiming that he has a cause of action for damages against an unidentified person; and
(c) Makes available for inspection, at our request, the motor vehicle *occupied* by the *insured* at the time of the accident.

2.  *Insured* means:

(a) *You*;
(b) *Your relatives*;
(c) Any other person while *occupying* an *owned auto*;
(d) Any person who is entitled to recover damages because of *bodily injury* sustained by an *insured* under (a), (b) and (c) above.

If there is more than one *insured*, our limits of liability will not be increased.

3.  *Insured auto* is an auto:

 (a)  Described in the declarations and covered by the liability coverages of this policy;
 (b)  Temporarily substituted for an *insured auto* when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction;
 (c)  Operated by *you*.

 But the term *insured auto* does not include:

 (i)   A motor vehicle *used* to carry passengers or goods for hire except in a car pool;
 (ii)  A motor vehicle being *used* without the owner's permission; or
 (iii) Under subparagraphs (b) and (c) above, a motor vehicle owned by or furnished for the regular *use* of the *insured*.

4.  *Occupying* means in, on, getting into or getting out of.

5.  *Property damage* means injury to or destruction of an auto owned by *you* and covered by the bodily injury and property damage coverages of this policy and property in the auto if the property is owned by the *insured*.

6.  *State* includes the District of Columbia, the territories and possessions of the United States, and the Provinces of Canada.

7.  *Underinsured motor vehicle* means a motor vehicle with respect to which the sum of the limits of liability under all bodily injury liability bonds and insurance policies applicable at the time of the accident is less than the limits of liability under this coverage.

 The term *underinsured motor vehicle* does not include:

 (a)  An *insured auto*;
 (b)  A motor vehicle owned or operated by a self-insurer within the meaning of any motor vehicle financial responsibility law, motor carrier law or any similar law;
 (c)  A motor vehicle owned by the United States of America, any other national government, a *state,* or a political subdivision of any such government or its agencies;
 (d)  A land motor vehicle or *trailer* operated on rails or crawler treads or located for use as a residence or premises; and
 (e)  A farm-type tractor or equipment designed for use principally off public roads, except while used upon public roads.

8.  *Uninsured motor vehicle* is a motor vehicle which has no bodily injury liability bond or insurance policy applicable with liability limits complying with the financial responsibility law of the *state* in which the *insured auto* is principally garaged at the time of an accident. This term also includes a motor vehicle whose insurer is or becomes insolvent or denies coverage.

 The term *uninsured motor vehicle* does not include:

 (a)  An *insured auto*;
 (b)  A motor vehicle owned or operated by a self insurer within the meaning of any motor vehicle financial responsibility law, motor carrier law or any similar law;
 (c)  A motor vehicle owned by the United States of America, any other national government, a *state*, or a political subdivision of any such government or its agencies;
 (d)  A land motor vehicle or *trailer* operated on rails or crawler treads or located for use as a residence or premises; and
 (e)  A farm-type tractor or equipment designed for use principally off public roads, except while used upon public roads.

## LOSSES WE PAY

Under this coverage, we will pay damages for *bodily injury* and *property damage* caused by accident which the *insured* is legally entitled to recover from the owner or operator of an *uninsured motor vehicle*, or *underinsured motor vehicle* or a *hit-and-run motor vehicle* arising out of the ownership, maintenance or use of that motor vehicle.

The amount of the *insured's* recovery for these damages will be determined by agreement between the *insured* or his representative and us. The dispute may be arbitrated if an agreement cannot be reached. However, neither the *insured* nor we will be required to arbitrate unless arbitration is expressly required by state law.

No default judgment against a known person or organization allegedly legally responsible for the accident shall be conclusive as to legal liability or to the amount of damages to which the *insured* is entitled.

## EXCLUSIONS

### When This Coverage Does Not Apply

1.  This coverage does not apply to *bodily injury* to an *insured* if the *insured* or his legal representative has made a settlement or has been awarded a judgment of his claim without our prior written consent.

2. *Bodily injury* to an *insured* while *occupying* or through being struck by an *uninsured motor vehicle* owned by an *insured* or a *relative* is not covered.

3. The Uninsured Motorists coverage will not benefit any workmen's compensation insurer, self insurer, disability benefits insurer or property insurer.

4. We do not cover the United States of America or any of its agencies as an *insured*, third party beneficiary or otherwise.

5. There is no coverage for the first $250 as the total amount of all *property damage* as the result of any one accident.

6. *Bodily injury* or *property damage* that results from nuclear exposure or explosion including resulting fire, radiation or contamination is not covered.

7. *Bodily injury* or *property damage* that results from bio-chemical attack or exposure to bio-chemical agents is not covered

8. This coverage does not apply to any liability assumed under any contract or agreement.

9. This coverage does not apply to damage caused by an insured's participation in or preparation for, whether or not prearranged or organized, any racing, speed or demolition contest or stunting activity of any kind.

## LIMITS OF LIABILITY

Regardless of the number of autos or *trailers* to which this policy applies:

1. The limit of bodily injury liability for Uninsured and Underinsured Motorists coverage stated in the declarations as applicable to "each person" is the limit of our liability for all damages, including those for care or loss of services, due to *bodily injury* sustained by one person as the result of one accident.

2. The limit of bodily injury liability stated in the declarations as applicable to "each accident" is, subject to the above provision respecting each person, the total limit of our liability for all such damages, including damages for care and loss of services, because of *bodily injury* sustained by two or more persons as the result of any one accident.

3. The limit of property damage liability stated in the declarations as applicable to "each accident" is our total limit of liability for all damages to the property of one or more *insureds* as the result of any one accident.

4. When coverage is afforded to two or more autos, the limits of liability shall apply separately to each auto as stated in the declarations but shall not exceed the highest limit of liability applicable to one auto.

If separate policies with us are in effect for *you* or any person in *your* household, they may not be combined to increase the limit of our liability for a loss.

We shall not be obligated to make any payment because of *bodily injury* to which this insurance applies and which arises out of the ownership, maintenance or *use* of an *underinsured motor vehicle* until after the limits of liability under all bodily injury liability bonds and insurance policies applicable at the time of the accident have been exhausted by payment of judgments or settlements.

The amount payable under this coverage will be reduced by all amounts:

    (a) Paid by or for all persons or organizations liable for the injury;
    (b) Paid or payable under the Bodily Injury coverage or Medical Payments coverage of this policy; or
    (c) Paid or payable under any workmen's compensation law, disability benefits law or any similar law; or
    (d) Paid or payable under any property insurance policy.

## OTHER INSURANCE

When an *insured occupies* an auto not described in this policy, this insurance is excess over any other similar insurance available to the *insured* for *bodily injury* and the insurance which applies to the occupied auto is primary.

Except as provided above, if the *insured* has other similar bodily injury insurance available to him and applicable to the accident, the damages for *bodily injury* will be deemed not to exceed the higher of the applicable limits of liability of this insurance and the other insurance. If the *insured* has other insurance against a loss covered by the Uninsured/Underinsured Motorist provisions of this policy, we will not be liable for more than our pro-rata share of the total coverage available.

With respect to *property damage*, this insurance shall be excess over other valid and collectible property damage insurance.

## ARBITRATION

Except as set forth in the last sentence of this paragraph, any dispute arising between any *insured* and us regarding:

(a) The extent to which the *insured* is legally entitled to recover against an owner or operator of an *uninsured motor vehicle* (i.e., issues of liability); or

(b) The amount of damages sustained by the *insured* may be arbitrated. However, neither the *insured* nor we will be required to arbitrate unless arbitration is expressly required by *state* law. Binding arbitration will not be used to resolve disputes regarding policy interpretation, the existence of this Coverage in a particular policy, or the application of this Coverage to a particular claim or claimant.

We will be obligated to pay no more than the applicable policy limits for this coverage regardless of whether an arbitration results in an award in excess of the applicable policy limits for this coverage as defined in this policy.

Unless otherwise required by *state* law, the method, manner and format of any arbitration process will be subject to agreement by *you* and us. Attorney fees and expenses will be paid by the party incurring them.

**TRUST AGREEMENT**

When we make a payment under this coverage:

1. We will be entitled to repayment of that amount out of any settlement or judgment the *insured* recovers from any person or organization legally responsible for the *bodily injury* or *property damage*.
2. The *insured* will hold in trust for our benefit all rights of recovery which he may have against any person or organization responsible for these damages. He will do whatever is necessary to secure all rights of recovery and will do nothing after the loss to prejudice these rights.
3. At our written request, the *insured*, in his own name, will take through a designated representative appropriate actions necessary to recover payment for damages from the legally responsible person or organization.

   The *insured* will pay us out of the recovery for our expenses, costs and attorneys' fees.
4. The *insured* will execute and furnish us with any needed documents to secure his and our rights and obligations.

**CONDITIONS**

The following conditions apply only to the Uninsured and Underinsured Motorists coverages:

1. **NOTICE**

   As soon as possible after an accident, notice must be given by or on behalf of the *insured* to us or our authorized agent stating:
   (a) The identity of the *insured*;
   (b) The time, place and details of the accident; and
   (c) The names and addresses of the injured, and of any witnesses.

   If the *insured* or his legal representative files suit before we make a settlement under this coverage, he must immediately provide us with a copy of the pleadings.

2. ASSISTANCE AND COOPERATION OF THE *INSURED*

   After we receive notice of a claim, we may require the *insured* to take any action necessary to preserve his recovery rights against any allegedly legally responsible person or organization. We may require the *insured* to make that person or organization a defendant in any action against us.

   Upon our request, the *insured* must make available for our inspection the motor vehicle he was *occupying* at the time of the accident.

   The *insured* must protect the vehicle from further loss. Further loss due to the *insured's* failure to protect will not be covered.

3. ACTION AGAINST US

   Suit will not lie against us unless the *insured* or his legal representative have fully complied with all the policy terms.

4. **PROOF OF CLAIM AND MEDICAL REPORTS**

   As soon as possible, the *insured* or other person making claim must give us written proof of claim, under oath if required. This will include details of the nature and extent of *bodily injury*, treatment, and other facts which may affect the amount payable.

   Proof of claim must be made on forms furnished by us unless we have not furnished these forms within 15 days after receiving notice of claim.

   The injured person will submit to examination by doctors chosen by us, at our expense, as we may reasonably require. In the event of the *insured's* incapacity or death, his legal representative must, at our request, authorize us to obtain medical reports and copies of records

   The *insured* or other person making a *property damage* claim shall file a proof of loss in sworn statement form with us within 60 days after the loss occurs (unless we extend the time in writing). This statement must show: the interest of the *insured* and all others in the property, any liens or other claims on the property, the actual cash value at time of loss, and description and amounts of all other insurance on the property. If we ask, the *insured* must show us the damaged property.

A30NM (02-13) Page 14 of 17

5. PAYMENT OF LOSS

Any amount due is payable:

(a) To the *insured* or his authorized representative;
(b) If the *insured* is a minor, to his parent or guardian; or
(c) If the *insured* is deceased, to his surviving spouse; otherwise
(d) To a person authorized by law to receive the payment; or to a person legally entitled to recover payment for the damages.

We may, at our option, pay an amount due in accordance with (d) above.

## SECTION V - GENERAL CONDITIONS
### THESE CONDITIONS APPLY TO ALL COVERAGES IN THIS POLICY

1. **TERRITORY**

   This policy applies only to accidents, occurrences or losses during the policy period within the United States of America, its territories or possessions, or Canada or when the auto is being transported between ports thereof.

2. **PREMIUM**

   When *you* dispose of, acquire ownership of, or replace a *private passenger, farm* or *utility auto*, any necessary premium adjustment will be made as of the date of the change and in accordance with our manuals.

3. **CHANGES**

   The terms and provisions of this policy cannot be waived or changed, except by an endorsement issued to form a part of this policy.

   We may revise this policy during its term to provide more coverage without an increase in premium. If we do so, *your* policy will automatically include the broader coverage when effective in *your* state.

   The premium for each auto is based on the information we have in *your* file. *You* agree:

   (a) That we may adjust *your* policy premiums during the policy term if any of this information on which the premiums are based is incorrect, incomplete or changed;
   (b) That *you* will cooperate with us in determining if this information is correct and complete;
   (c) That *you* will notify us of any changes in this information.

   Any calculation or recalculation of *your* premium or changes in *your* coverage will be based on the rules, rates and forms on file, if required, for our use in *your* state.

4. **ASSIGNMENT**

   *Your* rights and duties under this policy may not be assigned without our written consent.

   If *you* die, this policy will cover:

   (a) *Your* surviving spouse, if covered under the policy prior to *your* death, and until the expiration of the policy term;
   (b) The executor or administrator of *your* estate, but only while operating an *owned auto* and while acting within the scope of his duties; and
   (c) Any person having proper temporary custody of and operating the *owned auto*, as an *insured*, until the appointment and qualification of the executor or administrator of your *estate.*

5. **CANCELLATION BY THE *INSURED***

   *You* may cancel this policy by providing notice to us stating when, after the notice, cancellation will be effective. If this policy is canceled, *you* may be entitled to a premium refund. The premium refund, if any, will be computed according to our manuals.

6. **CANCELLATION BY US**

   We may cancel this policy by mailing to *you*, at the address shown in this policy, written notice stating when the cancellation will be effective.

   We will mail this notice:

   (a) 10 days in advance if the proposed cancellation is for non-payment of premium or any of its installments when due, or if the policy has been in effect less than 60 days at the time notice is mailed and this is not a renewal policy.
   (b) 30 days in advance if the policy has been in effect for 60 days or more and there has been a substantial change in the risk since the policy has been issued.

(c) 15 days in advance in all other cases.

The mailing or delivery of the above notice will be sufficient proof of notice. The policy will cease to be in effect as of the date and hour stated in the notice.

If this policy is canceled, *you* may be entitled to a premium refund. The premium refund, if any, will be computed according to our manuals.

Payment or tender of unearned premium is not a condition of cancellation.

7. CANCELLATION BY US IS LIMITED

After this policy has been in effect for 60 days or, if the policy is a renewal policy, we will not cancel except for any of the following reasons:

   (a) *You* do not pay the initial premium on other than a renewal policy or any additional premium for this policy or fail to pay any premium installment when due to us or our agent.
   (b) There has been a substantial change in the risk.
   (c) *You* obtained the policy through material misrepresentation, fraud or concealment of facts material to our acceptance of the risk or to proper rating.
   (d) Willful and negligent acts or omissions by *you* have substantially increased the hazards we insure.
   (e) *Your* driver's license, that of any resident of *your* household, or that of any customary operator of an *insured auto* has been under suspension or revocation during the policy period.
   (f) *You* present a claim based on fraud or material misrepresentation.

We have the right to modify the Comprehensive coverage under Section III by including a deductible not exceeding $100.

8. RENEWAL

We will not refuse to renew this policy unless written notice of our refusal to renew is mailed to *you*, at the address shown in this policy, at least 30 days prior to the expiration date. The mailing or delivery of this notice by us will be sufficient proof of notice. This policy will expire without notice if any of the following conditions exist:

   (a) *You* do not pay any premium as we require to renew this policy.
   (b) *You* have informed us or our agent that *you* wish the policy to be canceled or not renewed.
   (c) *You* do not accept our offer to renew or *you* refuse to provide us with renewal classification and rating information as we may require.

9. OTHER INSURANCE

If other insurance is obtained on *your insured auto*, any similar insurance afforded under this policy for that auto will terminate on the effective date of the other insurance.

10. DIVIDEND PROVISION

*You* are entitled to share in a distribution of the surplus of the company as determined by its Board of Directors from time to time.

11. DECLARATIONS

By accepting this policy, *you* agree that:

   (a) The statements in *your* application and in the declarations are *your* agreements and representations;
   (b) This policy is issued in reliance upon the truth of these representations; and
   (c) This policy, along with the application and declaration sheet, embodies all agreements relating to this insurance.

The terms of this policy cannot be changed orally.

12. FRAUD AND MISREPRESENTATION

Coverage is not provided to any person who knowingly conceals or misrepresents any material fact or circumstance relating to this insurance:

   (a) At the time application is made; or
   (b) At any time during the policy period; or
   (c) In connection with the presentation or settlement of a claim.

13. EXAMINATION UNDER OATH

The *insured* or any other person seeking coverage under this policy must submit to examination under oath by any other person named by us when and as often as we may require.

**14.** POLICY PERIOD

Unless otherwise cancelled, this policy will expire as shown in the declarations. But, it may be continued by our offer to renew and **your** acceptance by payment of the required renewal premium prior to the expiration date. Each period will begin and expire at 12:01 A.M. local time at **your** address stated in the declarations.

**15.** TERMS OF POLICY CONFORMED TO STATUTES

Any terms of this policy in conflict with the statutes of New Mexico are amended to conform to those statutes.

**16.** DISPOSAL OF VEHICLE

If **you** relinquish possession of a leased vehicle or if **you** sell or relinquish ownership of an **owned auto**, any coverage provided by this policy for that vehicle will terminate on the date **you** do so.

**17.** CHOICE OF LAW

The policy and any amendment(s) and endorsement(s) are to be interpreted pursuant to the laws of the state of New Mexico.

---

## SECTION VI - AMENDMENTS AND ENDORSEMENTS
## SPECIAL ENDORSEMENT - UNITED STATES GOVERNMENT EMPLOYEES

**A.** Under the Property Damage coverage of **Section I**, we provide coverage to United States Government employees, civilian or military, using

1. Motor vehicles owned or leased by the United States Government or any of its agencies, or
2. Rented motor vehicles **used** for United States government business,

when such **use** is with the permission of the United States Government. Subject to the limits described in paragraph **B.** below, we will pay sums **you** are legally obligated to pay for damage to these vehicles.

**B.** The following limits apply to this coverage:

1. A $100 deductible applies to each occurrence.
2. For vehicles described in **A.1.** above, our liability shall not exceed the lesser of the following:
   a. The **actual cash value** of the property at the time of the occurrence; or
   b. The cost to repair or replace the property, or any of its parts with other of like kind and quality; or
   c. Two months basic pay of the **insured**; or
   d. The limit of Property Damage Liability coverage stated in the declarations.
3. For vehicles described in **A.2.** above, our liability shall not exceed the lesser of the following:
   a. The **actual cash value** of the property at the time of the occurrence; or
   b. The cost to repair or replace the property, or any of its parts with other of like kind and quality; or
   c. The limit of Property Damage Liability coverage stated in the declarations.

This insurance is excess over other valid and collectible insurance.

W. C. E. Robinson
Secretary

O. M. Nicely
President

STATE OF NEW MEXICO
### OFFICE OF SUPERINTENDENT OF INSURANCE
Mailing Address: P.O. Box 1689, Santa Fe, NM 87504-1689
Physical Address: 1120 Paseo de Peralta, Room 428, Santa Fe, NM 87501
Main Phone: (505) 827-4601; Main Fax (505) 827-4734; Toll Free: 1-855-4-ASK-OSI
www.osi.state.nm.us

**SUPERINTENDENT OF**                                    **Service of Process**
**INSURANCE**                                              Room 434
John G. Franchini – (505) 827-4299                       (505) 827-1291

**DEPUTY SUPERINTENDENT**
Robert Doucette – (505) 827-4439

February 26, 2016

GEICO General Insurance Co.
Legal Dept. - Gregory S. Jacobi.
4201 Spring Valley Rd.
Dallas, TX 75224

    Re: Julian Tepper Vs GEICO General Insurance Company,
D202CV2016-00909

Dear Mr. President:

In accordance with the provisions of NMSA 1978, Sections 59A-5-31 & 59A-32, enclosed is a copy of a Summons, Complaint for Uninsured Motorist Damage Injuries, Breach of Contract, Bad Faith and Punitive Damages and Court-Annexed Arbitration Certification, to Defendant GEICO General Insurance Company in the State of New Mexico on the above styled cause. Service has been accepted on your behalf as of February 26, 2016.

Respectfully,

*John D. Franchini*

John G. Franchini, Superintendent

Enclosure
CERTIFIED MAIL  7012 3460 0000 1399 1657

**EXHIBIT**
**B**

Skip to Main Content  Logout  My Account  Search Menu  New Civil Probate Family Search  Refine Search  Back     Location : Bernalillo County    Images  Help

# REGISTER OF ACTIONS
## CASE NO. D-202-CV-2016-00909

| Julian Tepper v. GEICO General Insurance Company | § § § § § § § | Case Type: | **Tort Auto** |
|---|---|---|---|
| | | Date Filed: | **02/11/2016** |
| | | Location: | **Bernalillo County** |
| | | Judicial Officer: | **Malott, Alan** |

### PARTY INFORMATION

| | | Attorneys |
|---|---|---|
| **Defendant** | GEICO General Insurance Company | |
| **Plaintiff** | Tepper, Julian | **Jerry A. Walz** |
| | | *Retained* |
| | | 505-275-1800(W) |

### EVENTS & ORDERS OF THE COURT

**OTHER EVENTS AND HEARINGS**

| | | |
|---|---|---|
| 02/11/2016 | **Cause Of Actions** | Tort: Personal Injury Auto |
| | Action Type | Action |
| 02/11/2016 | **Cause Of Actions** | Other Damages |
| | Action Type | Action |
| 02/11/2016 | **Cause Of Actions** | Bad Faith |
| | Action Type | Action |
| 02/11/2016 | **OPN: COMPLAINT** | |
| 02/11/2016 | **ARB: CERT NOT SUBJECT** | |
| 02/12/2016 | **Summons** | |
| | GEICO General Insurance Company | Unserved |

### FINANCIAL INFORMATION

| | | | |
|---|---|---|---|
| | **Plaintiff** Tepper, Julian | | |
| | Total Financial Assessment | | 132.00 |
| | Total Payments and Credits | | 132.00 |
| | **Balance Due as of 03/22/2016** | | **0.00** |
| 02/11/2016 | Transaction Assessment | | 132.00 |
| 02/11/2016 | File & Serve Payment | Receipt # ALBD-2016-4001    Tepper, Julian | (132.00) |



EXHIBIT
C

Jerry A. Walz, Esq.

**Walz and Associates, P.C.**

Alfred D. Creecy, Esq.

Samuel L. Winder, Esq.

*Also Admitted
in Texas & Colorado

Attorneys at Law

James J. Grubel, Esq.

*"Making Legal History"*

133 Eubank Blvd NE
Albuquerque, New Mexico 87123

(505) 275-1800
(505) 275-1802 FAX

January 27, 2015

GEICO
Alicia Batchelor, Examiner Code H300
P.O. Box 509105
San Diego, CA 92150-9930

Re:   Company Name:   **GEICO General Insurance Company**
      Claim Number:   **009421887-0101-784**
      Loss Date:      **Wednesday, February 20, 2013**
      Policyholder:   **Julian Tepper**
      Client Name:    **Julian Tepper**

Dear Ms. Batchelor,

We believe that Julian Tepper has reached maximum medical recovery to the greatest extent possible, as a result of the auto accident in which he was involved on February 20, 2013, in Albuquerque, New Mexico. This settlement demand is being made pursuant to Mr. Tepper's uninsured/underinsured motorist section of his policy.

    I.    <u>Liability:</u>

It is clear that the uninsured/underinsured motorist was at complete fault for this accident. We have already sent to you a copy of the police report that was made. As you know this motorist quickly exited the scene of this serious collision before police arrived.

There is no comparative fault on behalf of Mr. Tepper or any other driver. As you know, case precedent clearly implicates Mr. Tepper's uninsured/underinsured motorist provision which must compensate him for damages that he incurred as a result of this collision from the uninsured/underinsured.

    II.    <u>Primary Injuries</u>

As a direct and proximate result of the negligence of the uninsured/underinsured motorist, Mr. Tepper suffered multiple and serious injuries. We have previously executed a release in favor of X-Ray Associates of New Mexico, Paradigm Therapy Services, El Pueblo Health Service, PARS Medical P.C. and we have submitted at various times all medical records that we have received to you. To be on the safe side, we are submitting to you medical records we recently received from PARS Medical P.C. in New York, where Mr. Tepper now resides.



EXHIBIT

D

tabbies'

Alicia Batchelor
January 27, 2015
Page 2 of 3

The injuries are generally described as follows:

> Injury to Right Cervical, Right Shoulder and Scapular Pain. The pain is aggravated with abduction, flexion and rotation of the joint.

### III.   Residual Injuries

Even though he received competent medical treatment for his injuries, Mr. Tepper still suffers from the following injuries:

> Shoulder injury and continuous pain with radiation into the scapular region. He demonstrates muscular and structural imbalances resulting in strain and pain cycle patterning of the cervical and lumbosacral spine that perpetuates functional limitations. He has sustained a chronic aggravation of pre-existing cervical neck injuries.

### IV.   Past and future medical care

As you know, Mr. Tepper signed a release in favor of GEICO and we believe that you have all his medical records including billing information.  Mr. Tepper is receiving Medicare, therefore, any settlement would need to be approved pursuant to the SCHIP Act and funds set aside for future payment of medical bills and related fees by CMS.  This can be a time consuming process, therefore, we will complete any required paperwork that you may require in that regard.

Mr. Tepper suffers from continuing back pain all the time, and to a large extent his right arm is useless as the pain makes using it unmanageable. The shoulder and neck pain keep him awake at night, forcing him to rely on multiple pain medications for the slightest relief. Mr. Tepper continues to receive physical therapy, along with cortisone injections.

Because of the serious and enduring personal injuries, pain and suffering, Mr. Tepper has had to live in a state of never ending pain during what should be his golden years.  There does not appear to be any future treatments that will cure or further ameliorate his injuries and pain and suffering. His quality of life has greatly suffered.

### V.   Summary Letter from Dr. Anthony P. Reeve

Attached is a summary letter from Dr. Reeve which touches upon Mr. Tepper's injuries. However, Mr. Tepper has experienced an increase in his pain and suffering from the time Dr. Reeve's evaluation took place.

### VI.   Medical Bills

To the best of our calculations, Mr. Tepper has incurred in medical bills approximately $9,000.00. Most of the billing was paid by Medicare. The Expert Medical Evaluation by Dr. Reeve cost $2,500.00 and is included in the $9,000.00 figure. Even though it was an evaluation,

Alicia Batchelor
January 27, 2015
Page 3 of 3

it helped define the scope of injuries, and potential future treatment.

**VII.    Settlement Demand**

Therefore, a demand is made for uninsured/underinsured policy limits in the amount of $300,000.00. Mr. Tepper will continue to suffer from these debilitating injuries during a time period where he should be enjoying life to its fullest. Mr. Tepper has been in the past recognized as an exceptional attorney and legal scholar. He had no idea how his life would be forever altered by the driver who hit him.

Please respond within 15 days from the date of this demand, as you already have most, if not all, of the same information that we have including records you may have received from the HIPAA compliant release that we executed in favor of GEICO, as well as information set forth in the comprehensive questionnaire answered by Mr. Tepper.

Sincerely,

WALZ AND ASSOCIATES

Jerry A. Walz

JAW/jam

cc:  Julian Tepper, Esq.

Enclosure(s): as noted.

STATE OF NEW MEXICO
COUNTY OF BERNALILLO
SECOND JUDICIAL DISTRICT

JULIAN TEPPER

     Plaintiff,

v.

                                    Case No. D-202-CV-2016-00909

GEICO GENERAL INSURANCE COMPANY,

     Defendant.

### NOTICE OF FILING OF REMOVAL

     PLEASE TAKE NOTICE that Defendant GEICO General Insurance Company, by

and through its counsel of record, Chapman and Charlebois, P.C., (Donna L. Chapman

and Jessica C. Singer), has filed a Notice of Removal in the United States District Court

for the District of New Mexico. A true and correct copy of the Notice of Removal, attached

to this Notice as Exhibit "1" was emailed to:

Jerry A. Walz, Esq.
Walz and Associates, P.C.
133 Eubank Blvd. NE
Albuquerque, NM 87123
(505) 275-1800
jerryawalz@walzandassociates.com
*Attorney for Plaintiff*

                              Respectfully submitted,

                              **CHAPMAN AND CHARLEBOIS, P.C.**

                              _____

                              Donna L. Chapman
                              Jessica C. Singer
                              P.O. Box 92438
                              Albuquerque, NM 87199
                              505-242-6000
                              donna@cclawnm.com
                              jessica@cclawnm.com
                              *Attorneys for Defendant GEICO*

EXHIBIT

**E**

I HEREBY CERTIFY that on the 24th day of March, 2016, I filed the foregoing electronically through Odyssey File & Service, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Jerry A. Walz, Esq.
Walz and Associates, P.C.
133 Eubank Blvd. NE
Albuquerque, NM 87123
(505) 275-1800
jerryawalz@walzandassociates.com
*Attorney for Plaintiff*

Stephen M. Simone
Simone, Roberts, & Weiss, P.A.
1700 Louisiana Blvd. NE, Ste. 240
Albuquerque, NM 87112
TEL: (505) 298-9400
ssimone@srw-law.com
*Attorneys for GEICO*

Jessica C. Singer

STATE OF NEW MEXICO
COUNTY OF BERNALILLO
SECOND JUDICIAL DISTRICT

JULIAN TEPPER

    Plaintiff,

v.

                                          Case No. D-202-CV-2016-00909

GEICO GENERAL INSURANCE COMPANY,

    Defendant.

## ENTRY OF APPEARANCE

Chapman and Charlebois, P.C. (Donna L. Chapman and Jessica C. Singer) hereby enter their appearance on behalf of Defendant GEICO General Insurance Company as to the extra-contractual claims only. Copies of all documents pertaining to litigation in this matter should be sent to the undersigned attorneys.

                        Respectfully submitted,

                        CHAPMAN AND CHARLEBOIS, P.C.

                        Donna L. Chapman
                        Jessica C. Singer
                        P.O. Box 92438
                        Albuquerque, NM 87199
                        505-242-6000
                        donna@cclawnm.com
                        jessica@cclawnm.com
                        *Attorneys for Defendant GEICO*



EXHIBIT
F

I HEREBY CERTIFY that on the 24th day of March, 2016, I filed the foregoing electronically through Odyssey File & Service, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Jerry A. Walz, Esq.
Walz and Associates, P.C.
133 Eubank Blvd. NE
Albuquerque, NM 87123
(505) 275-1800
jerryawalz@walzandassociates.com
*Attorney for Plaintiff*

Stephen M. Simone
Simone, Roberts, & Weiss, P.A.
1700 Louisiana Blvd. NE, Ste. 240
Albuquerque, NM 87112
TEL: (505) 298-9400
ssimone@srw-law.com
*Attorneys for GEICO*

Jessica C. Singer

2

JS 44 (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| JULIAN TEPPER | GEICO GENERAL INSURANCE COMPANY |

**(b)** County of Residence of First Listed Plaintiff    Sandoval County
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    MARYLAND
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Jerry A. Walz, Esq.
Walz and Associates, P.C.
133 Eubank Blvd. NE, Albuquerque, NM 87123 (505) 275-1800

Attorneys *(If Known)*
Donna L. Chapman/Jessica C. Singer
CHAPMAN AND CHARLEBOIS, P.C., 1400 OSUNA NE, STE 2-203
Albuquerque, NM 87109 (505) 242-6000

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U.S. Government
     Plaintiff

☐ 3  Federal Question
     *(U.S. Government Not a Party)*

☐ 2  U.S. Government
     Defendant

☒ 4  Diversity
     *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*      *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☒ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product |     Product Liability | | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument |     Liability | ☐ 367 Health Care/ | | | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & |     Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 450 Commerce |
|     & Enforcement of Judgment |     Slander |     Personal Injury | | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' |     Product Liability | | ☐ 830 Patent | ☐ 470 Racketeer Influenced and |
| ☐ 152 Recovery of Defaulted |     Liability | ☐ 368 Asbestos Personal | | ☐ 840 Trademark |     Corrupt Organizations |
|     Student Loans | ☐ 340 Marine |     Injury Product | | | ☐ 480 Consumer Credit |
|     (Excludes Veterans) | ☐ 345 Marine Product |     Liability | **LABOR** | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment |     Liability | **PERSONAL PROPERTY** | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ |
|     of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud |     Act | ☐ 862 Black Lung (923) |     Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 720 Labor/Management | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 190 Other Contract |     Product Liability | ☐ 380 Other Personal |     Relations | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal |     Property Damage | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 196 Franchise |     Injury | ☐ 385 Property Damage | ☐ 751 Family and Medical | | ☐ 895 Freedom of Information |
| | ☐ 362 Personal Injury - |     Product Liability |     Leave Act | |     Act |
| |     Medical Malpractice | | ☐ 790 Other Labor Litigation | | ☐ 896 Arbitration |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement | **FEDERAL TAX SUITS** | ☐ 899 Administrative Procedure |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** |     Income Security Act | ☐ 870 Taxes (U.S. Plaintiff |     Act/Review or Appeal of |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | |     or Defendant) |     Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate | | ☐ 871 IRS—Third Party | ☐ 950 Constitutionality of |
| ☐ 240 Torts to Land | ☐ 443 Housing/ |     Sentence | |     26 USC 7609 |     State Statutes |
| ☐ 245 Tort Product Liability |     Accommodations | ☐ 530 General | | | |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| |     Employment | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 446 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | |
| |     Other | ☐ 550 Civil Rights |     Actions | | |
| | ☐ 448 Education | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - | | | |
| | |     Conditions of | | | |
| | |     Confinement | | | |

**EXHIBIT G**   tabbies

## V. ORIGIN *(Place an "X" in One Box Only)*

☐ 1  Original
     Proceeding

☒ 2  Removed from
     State Court

☐ 3  Remanded from
     Appellate Court

☐ 4  Reinstated or
     Reopened

☐ 5  Transferred from
     Another District
     *(specify)*

☐ 6  Multidistrict
     Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. Sec. 1332, 1441, 1441(b), 1446 and 1446(b)(2)(A)

Brief description of cause:
Personal Injury, UM/UIM

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:    ☐ Yes    ☒ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*
JUDGE      DOCKET NUMBER

DATE   3/24/16

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #     AMOUNT     APPLYING IFP     JUDGE     MAG. JUDGE